1

2

3

4

5                       UNITED STATES DISTRICT COURT

6                       EASTERN DISTRICT OF WASHINGTON

7    WENDY M. ALGUARD,

8                          Plaintiff,              NO:  13-CV-3083-TOR

9          v.                                      ORDER DENYING DEFENDANT'S
                                                   MOTION FOR SUMMARY
10   THOMAS VILSACK, SECRETARY                     JUDGMENT
     OF THE U.S. DEPARTMENT OF
11   AGRICULTURE,

12                          Defendant.

13

14        BEFORE THE COURT is Defendant's Motion for Summary Judgment

15   (ECF No. 41).  This matter was submitted for consideration without oral argument.

16   The Court has reviewed the briefing, the record, and files herein, and is fully

17   informed.

18                          **BACKGROUND**

19        On October 25, 2013, Plaintiff filed her First Amended Complaint alleging,

20   *inter alia*, discrimination and retaliation arising out of her employment with the

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1    U.S. Department of Agriculture.  In ruling on Defendant's Motion to Dismiss, this

2    Court dismissed Plaintiff's disability discrimination claim for failure to exhaust.

3    ECF No. 39.  In the instant motion, Defendant moves for summary judgment on

4    the whistleblower portion of Plaintiff's First Amended Complaint, asserting that

5    Plaintiff never made a valid whistleblower complaint.  ECF No. 41.

6                            **FACTS AND PROCEDURAL HISTORY**

7            Beginning in 2001, the U.S. Department of Agriculture ("USDA" or

8    "Agency") employed Plaintiff Wendy Alguard as an Agricultural Commodity

9    Grader Inspector with the USDA's Agricultural Marketing Service.  In this

10   position, Plaintiff inspected food products at several food products manufacturers.

11   During her employ with the Agency, Plaintiff learned that one of the

12   manufacturers, Snokist, had been hiding totes of moldy applesauce from Food and

13   Drug Administration ("FDA") inspectors.  Plaintiff reported this issue to the FDA

14   in May 2011.[1]  As a result, in June 2011, the USDA cancelled its contract with

---

15   [1] Defendant contends that Plaintiff first reported the issue to her supervisor, Doug

16   Augspurg, who then informed FDA personnel of the issue and advised that they

17   speak with Plaintiff.  ECF No. 42 at 2.  A Memorandum of Understanding

18   ("MOU") between the USDA and FDA required the Agricultural Marketing

19   Service to share information with the FDA regarding food inspection and food

20   product quality.  ECF No. 42-2.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Snokist.  This cancellation, among others, led to a decline in work volume at the USDA's Yakima station, which resulted in the USDA reassigning two inspectors. Plaintiff was one of the inspectors selected for reassignment, which she formally refused.  The USDA removed Plaintiff from her position, effective December 2011.

On September 6, 2011, following her reassignment but before her removal, Plaintiff initiated proceedings with the Office of Special Counsel ("OSC"), alleging retaliation for whistleblowing.  In her complaint, Plaintiff stated the following regarding her disclosure: "I informed the FDA that the processing facility where I was stationed was reprocessing 300 gallon applesauce totes that [were] harmful to humans. I also disclosed that the processing facility had hidden the totes in their 'ripening rooms' where the FDA could not have looked."  ECF No. 30-2 at 5.  By January 2012, the OSC had neither terminated Plaintiff's claim nor announced that it would seek corrective action on her behalf.

Following her removal, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") on January 13, 2012, challenging the correctness of both her reassignment and removal.[2]  On the form submitted to the MSPB,

---

[2] As previously found by this Court, the discrimination portion of Plaintiff's case was not properly before the MSPB.  The Civil Service Reform Act provides several options to a federal employee alleging discrimination in the workforce,

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1    Plaintiff indicated that she was reassigned and removed "due to reprisal for

2    cooperating and disclosing information to the FDA" which action led to a "loss of

3    revenue for USDA."  ECF No. 48-5 at 51.  Specifically in the section prompting

4

5    including filing a mixed case appeal to the Merit Systems Protection Board

6    ("MSPB") in certain cases.  *Conforto v. Merit Sys. Prot. Bd.*, 713 F.3d 1111, 1115

7    (Fed. Cir. 2013).  However, in Plaintiff's case, she first elected to proceed through

8    EEO procedures, which forum issued a final decision finding no discrimination in

9    June 2012.  Plaintiff did not appeal this decision but instead continued with her

10   concurrent proceedings before the MSPB, which she had initiated in January 2012.

11   The MSPB heard Plaintiff's case, including her discrimination claim, and issued its

12   final decision in July 2013, which decision Plaintiff timely appealed.  Although

13   this Court finds that Plaintiff's discrimination claim was not properly before the

14   MSPB (without her first exhausting EEO procedures which she initially elected),

15   even if the MSPB had declined to hear Plaintiff's discrimination claim, such denial

16   would be reviewable by this Court.  *See Kloeckner v. Solis*, 133 S.Ct. 596, 607

17   (2012) ("A federal employee who claims that an agency action appealable to the

18   MSPB violates an antidiscrimination statute listed in § 7702(a)(1) should seek

19   judicial review in district court . . . That is so whether the MSPB decided her case

20   on procedural grounds or instead on the merits.").

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

Plaintiff to provide the facts underlying her whistleblower claim, Plaintiff stated

the following:

> I disclosed information to the FDA on 5/6/2011. On 6/8/2011, USDA
> had contracts with Snokist cancelled due to the information I provided
> to the FDA. On approximately 6/14/2011, USDA was removed from
> Snokist based on a Memorandum of Agreement with the FDA
> because of the information I provided to the FDA. On 8/23/2011, I
> received a letter stating that I was to be directly reassigned due to lack
> of work. There was no lack of work and I was replaced by part-time
> employees.

*Id.* at 61.[3]  With respect to Plaintiff's whistleblower claim, the Agency agreed to

assume for the purposes of the MSPB hearing that Plaintiff made a valid

---

[3] Plaintiff also indicated that her supervisor, Ms. Augspurg, had been alerted to the

issue at Snokist by two other inspectors in 2008 and by Plaintiff in 2009 and 2010,

but had told Plaintiff and the other inspectors "to mind [their] own business

regarding the totes."  ECF No. 48-5 at 60.  However, this Court's review of the

administrative record reveals that it was Plaintiff's disclosures to the FDA

regarding Snokist employee misconduct that gave rise to her whistleblower claim.

*See* ECF Nos. 48-6 at 26, 43; 50-5 at 3-4; 50-6 at 1-2; 50-7 at 3; 50-8 at 2, 7-9.

Accordingly, this Court excludes belated argument, submitted for the first time in

Plaintiff's First Amended Complaint and not argued before the MSPB, that

Plaintiff also "blew the whistle" on any alleged governmental misconduct on the

part of her supervisor, Mr. Augspurg.

1    whistleblower claim and thus requested to proceed to the merits.  ECF No. 48-2 at

2    9.  The MSPB rendered its decision in favor of the USDA, which decision became

3    final in August 2013.  Plaintiff timely commenced the instant lawsuit, seeking

4    review of the MSPB's final decision.

5         In the instant motion, Defendant seeks summary judgment on a portion of

6    Count 2 of Plaintiff's First Amended Complaint.  ECF No. 41.  In her First

7    Amended Complaint, Plaintiff challenges the MSPB's decision as an abuse of

8    discretion or misapplication of law, or otherwise lacking substantial evidence.

9    ECF No. 8 at 14-15.  Specifically, Plaintiff challenges the MSPB's analysis of her

10   whistleblower claim, its decision to confine her to MSPB proceedings rather than

11   permitting her to also seek remedies before the OSC, and its analysis of the

12   USDA's implementation of its reassignment procedures.  *Id.*  In his motion for

13   summary judgment, Defendant challenges only the portion of Count 2 dealing with

14   Plaintiff's whistleblower claim.  ECF No. 41 at 1.

## DISCUSSION

### A. Standard for Summary Judgment

17        Summary judgment may be granted to a moving party who demonstrates

18   "that there is no genuine dispute as to any material fact and the movant is entitled

19   to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the

20   initial burden of demonstrating the absence of any genuine issues of material fact.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the

2   non-moving party to identify specific facts showing there is a genuine issue of

3   material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

4   "The mere existence of a scintilla of evidence in support of the plaintiff's position

5   will be insufficient; there must be evidence on which the [trier-of-fact] could

6   reasonably find for the plaintiff."  *Id.* at 252.

7         For purposes of summary judgment, a fact is "material" if it might affect the

8   outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

9   such fact is "genuine" only where the evidence is such that the trier-of-fact could

10   find in favor of the non-moving party.  *Id.*  "[A] party opposing a properly

11   supported motion for summary judgment "may not rest upon the mere allegations

12   of denials of his pleading, but must set forth specific facts showing that there is a

13   genuine issue for trial."  *Id.*; *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*,

14   391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to

15   trial if it presents sufficient, probative evidence supporting the claimed factual

16   dispute, rather than resting on mere allegations).  Moreover, "[c]onclusory,

17   speculative testimony in affidavits and moving papers is insufficient to raise

18   genuine issues of fact and defeat summary judgment.  *Soremekun v. Thrifty*

19   *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In ruling upon a summary

20   judgment motion, a court must construe the facts, as well as all rational inferences

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

### B. Whistleblower Protection Act

Defendant moves for summary judgment on a portion of Count 2 of Plaintiff's First Amended Complaint involving Plaintiff's whistleblower claim. The crux of Defendant's motion is whether Plaintiff made a disclosure that is protected by the Whistleblower Protection Act.[4]  Although Plaintiff's First Amended Complaint and briefing submitted to this Court seem to augment the

---

[4] In the underlying MSPB proceedings, the Agency did not stipulate that Plaintiff made a protected disclosure, as stated by the ALJ.  ECF No. 48-6 at 43.  Rather, the Agency stated the following: "The Agency's request to move directly to its burden of clear and convincing evidence is made solely in the interest of judicial economy, and to streamline the hearing process itself . . . The Agency is willing to assume, for purposes of this hearing, that Appellant made protected disclosures that were sufficient to give her Whistleblower status and protections."  ECF No. 48-2 at 9.  Further briefing submitted to the MSPB demonstrates the Agency questioned whether Ms. Alguard's disclosures were protected.  ECF No. 50-3 at 17 ("[I]t is questionable as to whether Ms. Alguard's statements that she made to the FDA would give her whistleblower status, as she was just doing her job.").

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1    basis for her whistleblower claim—including allegations that Plaintiff exposed

2    governmental misconduct on the part of her supervisor, Mr. Augspurg—this

3    Court's review is limited to what was before the MSPB.  Accordingly, the issue is

4    whether Plaintiff made protected disclosures when she reported Snokist's conduct

5    to the FDA in May 2011.

6        At the time of the events in question, the Whistleblower Protection Act of

7    1989 ("WPA") prohibited federal officials from taking personnel actions against

8    employees because of "any disclosure of information by an employee . . . which

9    the employee . . .  reasonably believes evidences—(i) a violation of any law, rule,

10   or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of

11   authority, or a substantial and specific danger to public health or safety."

12   5 U.S.C.  § 2302(b)(8)(A) (2006).  The WPA did not define what "any disclosure"

13   encompassed; however numerous Federal Circuit decisions narrowly interpreted

14   the otherwise broad language of the WPA.  *See e.g., Huffman v. Office of Pers.*

15   *Mgmt.*, 263 F.3d 1341 (Fed. Cir. 2001); *Willis v. Dep't of Agric.*, 141 F.3d 1139

16   (Fed. Cir. 1998).

17       In 2012, Congress passed the Whistleblower Protection Enhancement Act of

18   2012 ("WPEA"), which amended the WPA.  Pub. L. No. 112-199, 126 Stat. 1465

19   (2012) (codified in scattered sections of 5 U.S.C.).  The stated purpose of the

20   WPEA was to "clarify the disclosures of information protected from prohibited

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

personnel practices."  *Id*.  In the section titled "**CLARIFICATION OF**

**DISCLOSURES COVERED**," Congress explained that a "disclosure . . . made

during the normal course of duties of an employee" is a protected disclosure under

the Act.  *Id.* § 101 (codified at 5 U.S.C. § 2302(f)(2)).  Congress directed that the

WPEA become effective 30 days after its enactment, *id.* § 202, which was 30 days

after November 27, 2012.

     Defendant asserts that Plaintiff's disclosures are not protected.  First,

Defendant, citing to Federal Circuit precedent narrowly interpreting the WPA,

asserts that Plaintiff's disclosures were made during the course of her normal

duties as an inspector and thus are not protected by the Act.  ECF No. 41 at 4-9.

Second, Defendant invites the Court to find that the WPEA and its broadened

definition of disclosure does not retroactively apply to these proceedings, further

supporting his assertion that Plaintiff's disclosures are not protected.  *Id.* at 9-17.

     The Ninth Circuit was recently confronted with these issues in *Kerr v.*

*Jewell*, 549 Fed. App'x 635 (9th Cir. 2013).  In *Kerr*, the court held that certain

disclosures to supervisors and those made in the normal course of the employee's

duties are protected disclosures under the WPA.  In so finding, the court declined

to adopt Federal Circuit precedent narrowly defining "disclosure" under the WPA;

instead, the court opted for a more straightforward, statutory-interpretation

approach:

In reaching [the conclusion that Kerr's communications were not protected disclosures], the district court relied on a number of doctrines arising from cases in the Federal Circuit. *See Huffman v. Office of Personnel Mgmt.*, 263 F.3d 1341 (Fed. Cir. 2001); *Horton v. Dep't of the Navy*, 66 F.3d 279 (Fed. Cir. 1995); *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679 (Fed. Cir. 1992). The government urges us to adopt these doctrines and reject Kerr's WPA claims. We decline the invitation and, instead, decide the question as a straightforward issue of statutory interpretation. Section 2302(b)(8)(A) protects an employee making "*any* disclosure" (emphasis added) where the employee reasonably believes that the information evidences: "(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety[.]" Clearly, we must take the language "any disclosure" at face value, which compels us to conclude that Kerr's complaints fall within the broad protective scope of § 2302(b)(8)(A).

*Id.* at 640.  Because the Ninth Circuit settled on a broad interpretation of "any disclosure" under the WPA, it found it unnecessary to decide whether the WPEA retroactively applies to pending cases.  *Id.*  However, in a footnote, the court noted that the MSPB recently held that the WPEA *does* retroactively apply.  *Id.* at 640 n.4 (citing *Day v. Dep't of Homeland Sec.*, 119 M.S.P.R. 589 (2013)).

Although this Court is not bound by unpublished Ninth Circuit opinions, it does find the Circuit's broad interpretation of the WPA persuasive.  Although Plaintiff's disclosures to the FDA about the contaminated totes were arguably within her "normal duties" as an Agricultural Marketing Service employee, assigned with inspecting food manufacturers, the WPA protects "*any disclosure*" which the employee "reasonably believes evidences . . . a substantial and specific

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

danger to public health or safety."  5 U.S.C. § 2302(b)(8)(A) (2006) (emphasis added).  Given the plain language of the statute, Plaintiff's disclosures regarding the moldy applesauce totes squarely falls within the reach of the WPA.

Even if this Court were to consider whether the WPEA applies retroactively, it is bound by the clarification doctrine followed by the Ninth Circuit.  "It has been established law since nearly the beginning of the republic . . . that congressional legislation that thus expresses the intent of an earlier statute must be accorded great weight."  *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265-66 (9th Cir. 1997) (honoring Congress' explicit "clarification" label and accepting the new legislation's provisions as a statement of what the statute "meant all along"); *see also ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689-91 (9th Cir. 2000) ("Normally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively." (citing *United States v. Donaghe*, 50 F.3d 608, 612 (9th Cir. 1994)).

In the WPEA, Congress explicitly labeled the Act as one "to *clarify* the disclosures of information protected from prohibited personnel practices."  WPEA, Pub. L. 112-199,126 Stat. 1465 (2012).  Moreover, the specific amendments relevant here can be found under the title "**CLARIFICATION OF DISCLOSURES COVERED**." *Id.* § 101 (clarifying that disclosures made "during the normal course of duties of an employee" are protected).  Although

Congress did not explicitly state the Act should be given retroactive effect, the language it did use strongly evidences congressional intent that the WPEA—and its language *clarifying* existing law—applies to both future and pending cases. Thus, this Court finds further reason to find that Plaintiff's disclosures— disclosures "made during the normal course of duties" as an Agricultural Marketing Specialist—are protected. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 41) is **DENIED**.

**IT IS HEREBY ORDERED:**

Defendant's Motion for Summary Judgment (ECF No. 41) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** February 17, 2015.

THOMAS O. RICE
United States District Judge