UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WENDY M. ALGUARD,<br><br>                    Plaintiff,<br><br>        v.<br><br>THOMAS VILSACK, SECRETARY OF THE U.S. DEPARTMENT OF AGRICULTURE,<br><br>                    Defendant. | NO:  13-CV-3083-TOR<br><br>ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Second Motion for Summary Judgment (ECF No. 64).  This matter was submitted for consideration without oral argument.  The Court has reviewed the briefing, the record, and files therein, and is fully informed.

**BACKGROUND**

This case arises out of Plaintiff's former employment with the U.S. Department of Agriculture ("USDA" or "Agency").  On October 25, 2013,

Plaintiff filed her First Amended Complaint alleging, *inter alia*, discrimination and retaliation arising out of her employment with the USDA.  ECF No. 8.  In ruling on Defendant's Motion to Dismiss, this Court dismissed Plaintiff's disability discrimination claim—Count 1 of the First Amended Complaint—for failure to exhaust.  ECF No. 39.  Thus, only Count 2 remains.

In the instant motion, Defendant moves for summary judgment on Count 2 of Plaintiff's First Amended Complaint, which seeks review of the Merit System Protection Board's ("MSPB") final decisions.  ECF No. 64.

## FACTS AND PROCEDURAL HISTORY

### A. Disclosure, Reassignment, and Removal

The USDA's Agricultural Marketing Service ("AMS") employed Plaintiff Wendy Alguard as a full-time GS-1980-9 Agricultural Commodity Grader,[1] with an official duty station in Yakima, Washington.  AR 949 (citing AR 238).  The Agency provides inspection services to food-processing facilities in a seven-state

---

[1] Pursuant to the position description for GS-1980-9 Agricultural Commodity Grader, January 2010 revised edition, a GS-9 grader is "responsible for coordinating and/or performing inspection and grading work on processed fruits, vegetables and related products at processing plants, Area Offices, inspection points and/or similar facilities as assigned."  ECF No. 26-5.

region, with duty stations in Washington, Oregon, and Idaho. AR 949 (citing Hearing CD1 2:41).

In 2011, during her employ with the Agency, Plaintiff discovered that one of the facilities, Snokist, had been hiding totes of moldy applesauce. AR 949 (citing Hearing CD2 0:26; AR 314-19). Plaintiff disclosed this issue to the FDA in May 2011. AR 949 (citing Hearing CD2 0:26; AR 314-19). Subsequently, in June 2011, the USDA cancelled its contract with Snokist. AR 949 (citing AR 245-47, 287).

Due to overstaffing issues, Agency personnel decided to reassign two full-time GS-9 graders at the Yakima duty station with the most recent Service Computation Dates ("SCD"). AR 949-50 (citing AR 249-52; Hearing CD1 2:59-3:00). In addition, one other full-time grader at the Yakima duty station was planning to retire, which retirement would help alleviate the overstaffing issues. AR 949-50 (citing Hearing CD1 2:59-3:00).

Plaintiff, whom Human Resources determined had the lowest SCD at the Yakima Duty station, was one of the affected employees. AR 950 (citing AR 249-52, 728). The Agency notified Plaintiff that it was reassigning her to a full-time position in Warden, Washington. AR 950 (citing AR 249-52, 728; Hearing CD1 3:26). However, due to cancellation of the Warden contract, Plaintiff was subsequently reassigned to a vacancy in Kingsburg, California. AR 950 (citing AR

242).  At the time of reassignment, the Agency offered Plaintiff a number of options: she could report to her new assignment, accept a mixed tour of duty in Yakima, resign, or refuse reassignment.  AR 950 (citing AR 243).  Plaintiff refused the reassignment, AR 950 (citing AR 232), and, on September 6, 2011, initiated proceedings with the Office of Special Counsel ("OSC"), AR 1467 (citing AR 1224, 1229-33).  In her complaint, Plaintiff challenged her directed reassignment. AR 1467 (citing AR 1229-33).[2]

In October 2011, Plaintiff was notified of her proposed removal for failure to accept a directed reassignment.  AR 950 (citing AR 145-58, 160-62, 164-98, 203-04, 206-19).  Plaintiff's removal became effective in December 2011, AR 1468 (citing AR 145-58), and Plaintiff timely appealed her reassignment and removal to the MSPB on January 13, 2012, AR 950 (citing AR 1-31).

**B. Initial MSPB Decision**

On May 3, 2012, after conducting a hearing on March 29 and 30, 2012, Administrative Judge ("AJ") Benjamin Gutman issued his first decision ("Initial

---

[2] The Court detailed the full account of administrative proceedings underlying this matter in its previous Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.  ECF No. 39.

Decision"), finding in favor of the Agency.[3]  AR 948-71.  In his Initial Decision, the AJ found that (1) the Agency's decision to reassign Plaintiff—which decision Plaintiff was given adequate notice of and refused to accept—was bona fide and based on legitimate management reasons, AR 952-57; (2) Plaintiff had failed to prove her affirmative defense of whistleblower retaliation, as well as her other asserted defenses, AR 963-66; and (3) a "clear nexus" exists "between failure to accept a directed reassignment and the efficiency of the service, and removal is a reasonable penalty for that conduct," AR 966-67.

Plaintiff filed a Petition for Review of the AJ's Initial Decision on June 7, 2013.  AR 972-1018.  The Board denied the petition and remanded the case back to the AJ for further adjudication to determine (1) whether Plaintiff had made a binding election to proceed before the OSC and thus was prevented from pursuing her claim before the MSPB, and (2) whether the agency proved by clear and convincing evidence that it would have removed Plaintiff absent her whistleblowing.  AR 1069-77.  Specifically regarding the AJ's analysis of Plaintiff's whistleblower retaliation defense, the Board directed the AJ to reanalyze and gather additional evidence as to whether the Agency had taken similar actions against similarly situated non-whistleblower employees.  AR 1076.

_____

[3] Also on May 3, 2012, the OSC informed Plaintiff that it was closing her case in light of her MSPB appeal. AR 1224; *see* ECF No. 30-4.

ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT ~ 5

**C. Final Decision & Appeal**

On remand, the AJ again rendered a decision in favor of the Agency, which decision was issued on July 18, 2013 ("Final Decision"). AR 1465-81. First, the AJ found that Plaintiff had not made a binding election to proceed with the OSC; thus, the mixed case appeal was properly before the MSPB. AR 1467-69. Second, the AJ, after considering additional evidence, again found that that the Agency met its burden of proof with respect to the whistleblowing defense. AR 1469-76. The AJ reincorporated his previous nexus and penalty findings. AR 1475.

In August 2013, Plaintiff timely commenced the instant lawsuit, seeking review of the AJ's Initial and Final Decisions. ECF Nos. 4; 8.

## DISCUSSION

**A. Standard of Review for MSPB Decisions**

Generally, appeals of MSPB decisions must be filed in the Federal Circuit Court of Appeals; however, if a case involves both an appeal of a personnel action and a claim of discrimination—a so-called "mixed" case—then judicial review is with the district court. 5 U.S.C. § 7703(b)(2); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). In mixed cases, the district court reviews the discrimination claims *de novo* and the nondiscrimination claims under a deferential standard of review, *Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir. 1993), setting aside the MSPB's decision only if findings or conclusions are

found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Coons*, 383 F.3d at 888.

Although this Court previously dismissed Plaintiff's discrimination claim, it retains jurisdiction over the remainder of the action. *See Kloeckner v. Solis*, 133 S.Ct. 596, 607 (2012). Thus, this Court's remaining review is limited to review of the AJ's Initial and Final Decisions under the deferential standard set forth in 5 U.S.C. § 7703(c).[4]

_____

[4] Plaintiff's briefing raises issues that were not first raised in the administrative proceedings below: (1) whether the AJ improperly approved of the Agency's use of "as needed" workers to replace full-time inspectors; and (2) whether Plaintiff should have been granted attorney's fees for the proceedings below. ECF No. 68. This Court cannot consider these issues presented for the first time on appeal. *See, e.g.*, *James v. FERC*, 755 F.2d 154, 155-56 (Fed. Cir. 1985) ("A party will . . . not generally be heard on any issues raised for the first time on appeal."). Plaintiff's briefing also presents evidence that is not part of the administrative record. *See* ECF No. 84 at 2, 5-6. Because this Court's review of the evidence is limited to the administrative record, this Court disregards this evidence as irrelevant.

As the reviewing Court, this Court's duty is discharged when it applies "section 7703 to review an MSPB decision regarding an adverse agency action to determine whether the contested decision complies with the applicable statute and regulations and whether it has a rational basis supported by substantial evidence from the record taken as a whole." *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jacobs v. Dep't of Justice*, 35 F.3d 1543, 1546 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard of review "the court recognizes that it should not try to place itself in the shoes of the agency and second-guess it." *Hayes*, 727 F.2d at 1537; *see also Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1366 (Fed. Cir. 2012) ("In exercising this limited scope of review, we do not consider how we would have decided the case in the first instance, and may not merely substitute our judgment for that of the board.")

However, when reviewing the Board's decision for substantial evidence, the court "consider[s] evidence in the record that undermines as well as that which supports the Board's decision." *Washington*, 10 F.3d at 1428; *see also Jacobs*, 35 F.3d at 1546 ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). "If such an accounting so detracts from

1  the weight of the evidence that supports the Board's decision, or the agency's

2  evidence is so sparse, that a reasonable fact finder would not find the charge

3  proved by a preponderance of the evidence, the Board must be reversed." *Jacobs*,

4  35 F.3d at 1546 (internal quotation marks and citation omitted).

5      "The petitioner bears the burden of establishing error in the Board's

6  decision." *Buie v. Office of Pers. Mgmt.*, 386 F.3d 1127, 1129 (Fed. Cir. 2004).

7      **B. Whistleblower Protection Act**

8      The Whistleblower Protection Act of 1989 ("WPA"), subsequently amended

9  by the Whistleblower Protection Enhancement Act of 2012,[5] "prohibits any federal

10 agency from taking, failing to take, or threatening to take or fail to take, any

11 personnel action because of the disclosure of information by an employee or

12 applicant for employment that the employee or applicant reasonably believes to be

13 evidence of a violation of law, rule, or regulation, gross mismanagement or a waste

14 of funds, or a substantial and specific danger to public health or safety."

15 *Fellhoelter v. Dep't of Agric.*, 568 F.3d 965, 970 (Fed. Cir. 2009) (citing 5 U.S.C. §

16 2302(b)(8)).

17

18 [5] In 2012, Congress passed the Whistleblower Protection Enhancement Act of

19 2012.  Pub. L. No. 112-199, 126 Stat. 1465 (2012) (codified in scattered sections

20 of 5 U.S.C.).

1    "Analysis of a whistleblower defense takes place within a burden shifting

2    scheme, wherein the agency must first prove its case for removal by a

3    preponderance of the evidence . . . ." *Whitmore*, 680 F.3d at 1367. Then, in order

4    to establish her prima facie case for a whistleblower retaliation defense, the former

5    employee must show (1) that she made a protected disclosure under section

6    2302(b)(8), and (2) that this disclosure was "a contributing factor" to the adverse

7    employment action. *Id.* (quoting 5 U.S.C. § 2302(b)(8)); *Fellhoelter*, 568 F.3d at

8    970. If the former employee is able to meet this initial burden, the burden of

9    persuasion then shifts to the agency to show by "clear and convincing evidence"

10   that it would have taken the same personnel action in the absence of such

11   disclosure. *Whitmore*, 680 F.3d at 1367; *Fellhoelter*, 568 F.3d at 970-71.

12       This Court's analysis of the AJ's decisions will follow the same framework,

13   addressing the specific issues raised by Plaintiff where relevant: First, whether the

14   Agency proved the propriety of its reassignment and removal decisions by a

15   preponderance of the evidence; and second, whether the Agency proved by clear

16   and convincing evidence that it would have reassigned and ultimately removed

17   Plaintiff regardless of her disclosures.

18       **1. Reassignment of Plaintiff**

19        "When an adverse action is based upon an employee's failure to accept a

20   directed reassignment, the agency bears the initial burden of proving by

preponderant evidence that its decision to reassign the employee was bona fide, and based upon legitimate management reasons." *Krawchuk v. Dep't of Veterans Affairs*, 94 M.S.P.R. 641, 645 (MSPB 2003). In general, agencies are authorized to reassign federal employees, and the MSPB has repeatedly held that removal is not an unreasonably harsh penalty for refusal of such legitimate directed reassignment. *Frey v. Dep't of Labor*, 359 F.3d 1355, 1357 (Fed. Cir. 2004). "However, where a removal action is based on a refusal to accept a directed geographical reassignment, the agency must prove by a preponderance of the evidence that its reassignment decision was bona fide, and based upon legitimate management considerations in the interest of the service." *Id.* (internal quotation marks omitted). "Once it is established or unchallenged that a reassignment was properly ordered in an exercise of agency discretion under 5 C.F.R. part 335, the Board will not review the management considerations underlying that exercise of discretion." *Id.* at 1358.

In the proceedings below, the parties stipulated that the Agency gave Plaintiff adequate notice of the reassignment to Kingsburg and that she refused to accept it. AR 952. As such, the AJ, in his Initial Decision, proceeded to determine whether Plaintiff's reassignment was bona fide and based on legitimate management reasons, and not carried out arbitrarily or for improper purposes. AR 952.

**a. Bona Fide and Legitimate Reason for Reassignment**

**i. AJ's Findings**

First, the AJ found that the reason for Plaintiff's reassignment was overstaffing at the Yakima duty station, which he relatedly found to be a legitimate reason for directed reassignment.  AR 952 (citing *Cooke v. U.S. Postal Serv.*, 67 M.S.P.R. 401, 406 (MSPB 2013) (finding that agency had a legitimate management reason for reassigning the employee where record evidence demonstrated employee's work site had a reduced need for services); *Wear v. Dep't of Agric.*, 22 M.S.P.R. 597, 598-99 (MSPB 1984) (finding that "cutbacks in the regions" and "shortage of funds" were legitimate management reasons for a directed reassignment); *Camhi v. Dep't of Energy*, 12 M.S.P.B. 57, 48 (1982) ("[L]ack of work at appellant's duty station was a proper reason for reassigning appellant.")).

In finding that the Yakima duty station was overstaffed, the AJ commented on the following evidence: (1) the revenue of the Yakima office had plummeted in the last few years, AR 953 (citing AR 573-82; Hearing CD1 4:10-4:12); (2) at least four facilities had either cancelled their contracts or reduced inspection requirements, which resulted in "a substantial decrease in the amount of work required by Yakima-stationed employees," AR 953 (citing AR 841; Hearing CD1 2:53-2:54, 4:15); (3) cancellation of a contract with at least one of these facilities—

Snokist—had eliminated the need for one full-time grader, AR 953 (citing AR 588-696); (4) the Agency did not hire new employees or replace the reassigned and retired Yakima-stationed employees, AR 953 (citing Hearing CD2 1:54-1:55); and (5) if Plaintiff had remained on a mixed-tour schedule in Yakima, as she was invited to, she would have likely worked less than half time, AR 953 (citing Hearing CD1 4:35).

In considering this evidence, the AJ also considered evidence highlighted by Plaintiff that appeared to contradict the overstaffing at the Yakima duty station: (1) some of the inspection facilities had been bought by new companies and continued to have inspections, AR 953 (citing AR 925; Hearing CD2 0:38-0:40); (2) there was some inconsistency in the evidence whether the Yakima duty station was overstaffed by two or three employees, AR 953-54 (citing AR 164, 228, 925-26); and (3) after Plaintiff's removal, the remaining graders were busier than before, AR 954 (citing AR 831-32; Hearing CD2 0:41-0:41, 2:25-2:26).

The AJ reasonably explained why this evidence did not rebut the strong evidence otherwise supporting the overstaffing justification.

As to Plaintiff's contention that some of the inspection facilities were bought by new companies and continued to have inspections, the AJ found that this evidence did not demonstrate that the amount of work was comparable to what it had been before the contract cancellations and reduction in inspection services.

1  AR 953.  In support, the AJ highlighted the fact that the Agency did not hire new

2  employees to replace Plaintiff or the two other eliminated grader positions.  AR

3  953 (citing Hearing CD2 1:54-1:55).

4        As to the inconsistency in the level of overstaffing, the AJ quickly dismissed

5  this evidence as inconsequential.  First, the AJ noted the staffing outlook was "not

6  static," and at times it may have seemed as if only two positions would need to be

7  eliminated.  AR 954 (citing Hearing CD1 0:27, 2:42-2:43).  Second, this

8  inconsistency between eliminating two or three graders may have resulted from the

9  understanding that only two graders would need to be reassigned, while the third

10 was voluntarily retiring.  AR 954.  Third, the Agency ultimately eliminated three

11 graders.  AR 954.  Finally, and perhaps most important, whether or not the Agency

12 eliminated two or three graders, Plaintiff was first on the list of Yakima-stationed

13 GS-9 graders as she had the most recent SCD.  AR 954 (citing AR 728).

14       As to the amount of work the remaining graders were assigned, the AJ found

15 that this did not rebut the evidence showing the Agency needed to eliminate three

16 *full-time* graders at the Yakima duty station: "I find that there was work to be done,

17 but not consistently enough to warrant another full-time grader."  AR 955.

18 Moreover, Plaintiff's argument carried little weight as she was offered the

19 opportunity to switch to a mixed-tour schedule, in lieu of reassignment, and

20

1    declined, and even if she would have accepted the position, she would have been

2    working less than half time.  AR 954-55 (citing AR 232; Hearing CD1 4:35).

3          Ultimately, the AJ found the Agency's decision to eliminate three full-time

4    graders at the Yakima duty station was "legitimate" and that the Agency had

5    provided "adequate justification" for its action.  AR 955

6                          **ii. This Court's Findings**

7          Plaintiff, in her response briefing, faults the AJ for misapplying the

8    governing legal standard when determining whether the Agency had proved its

9    decision to reassign Plaintiff, asserting that the AJ was required to find that the

10   Agency had proved its charge by "clear and convincing" proof, rather than merely

11   requiring "adequate justification."  ECF No. 68 at 12.

12         This argument misunderstands the framework of the AJ's analysis.  The AJ

13   first considered whether the Agency has proved, by a preponderance of the

14   evidence, that its decision to reassign Plaintiff was bona fide and based on

15   "legitimate management reasons."  *See Frey*, 359 F.3d at 1357.  The AJ then, when

16   addressing the employee's whistleblower retaliation defense, considered whether

17   the Agency proved by "clear and convincing" evidence that it would have

18   reassigned Plaintiff in the absence of Plaintiff's disclosure.  *See Whitmore*, 680

19   F.3d at 1367.  As explained by the Federal Circuit in *Whitmore*, the heightened

20   "clear and convincing" standard, which Congress requires for whistleblower

1    retaliation cases, is "reserved to protect particularly important interests in a limited

2    number of civil cases." *Id.* Thus, this standard did not apply to the AJ's initial

3    assessment of whether the Agency had proved its decision to reassign Plaintiff was

4    bona fide and based on legitimate management reasons, which only required proof

5    by a preponderance of the evidence.

6         Similarly, Plaintiff also argues that the AJ "unlawfully lifted from USDA its

7    burden of clear and convincing proof and shifted the burden to [Plaintiff] to rebut

8    the asserted business justification for reducing services in Yakima." ECF No. 68 at

9    13. Again, the clear and convincing standard did not apply to this stage of the

10   analysis. Rather, the AJ found that the Agency had proved by preponderant

11   evidence that the Agency had a legitimate business justification for reassigning

12   Plaintiff, overstaffing, and Plaintiff failed to successfully contradict the evidence

13   presented. And contrary to Plaintiff's assertion, the AJ was not required—without

14   a motion to compel or a directive on remand—to order the Agency to "disclose its

15   files of out-of-Yakima-area service reductions." ECF No. 68 at 15; *see Tiffany v.*

16   *Dep't of Navy*, 795 F.2d 67, 69 (Fed. Cir. 1986) ("The Board has authority to issue

17   an order compelling discovery, but a petitioner must request this action by filing a

18   motion to compel with the presiding official.").

19        Finally, Plaintiff faults the AJ for ignoring contradictory business

20   justifications for her reassignment; that is, she questions the different revenue loss

calculations and exactly which contract cancellations led to her reassignment

considering the timeline of her reassignment and the contract cancellations.  ECF

No. 68 at 15-18.  However, the expected revenue losses and service reductions

presented to the AJ below—either through exhibits or testimony—reasonably

support the AJ's determination that the Agency provided adequate justification for

Plaintiff's reassignment.  *See* AR 573-82,840-44; ECF No. 65-2 at 3-4, 12-14

(Hearing CD1).  For instance, in addition to the testimony presented, the AJ

considered evidence showing approximately $400,000 in revenue loss.  AR 573,

581.[6]  This is especially relevant considering that AMS is a user fee-based program

where the money for services provided contributes to employee salaries.  *See* ECF

No. 65-2 at 19 (Hearing CD1).  Moreover, the loss of the Snokist contract alone—

cancelled in June 2011 before Plaintiff's reassignment—resulted in the need to

eliminate one full-time grader.  AR 588-695.

---

[6] Plaintiff highlights a chart attached to one of the emails from Mr. Augspurg to

show that there exists conflicting evidence as to whether the Agency had a

legitimate business purpose for reassignment.  ECF No. 68 at 16 (citing AR 577).

Although Plaintiff interprets the chart  as showing only a $60,000 loss in revenue,

Mr. Augspurg's email presenting the chart and other attachments explains that the

"overall revenue is down almost $400,000" from the 2006 fiscal year.  AR 573.

1    Even considering the evidence that detracts from the AJ's findings, this

2    Court concludes that the AJ's findings have a rational basis supported by

3    substantial evidence and are in accordance with the applicable law.  *Hayes*, 727

4    F.2d at 1537; *Jacobs*, 35 F.3d at 1546.  The AJ highlighted sufficient evidence to

5    support its conclusion that the Yakima duty station was overstaffed and sufficiently

6    addressed Plaintiff's rebuttal evidence to the contrary.  Although Plaintiff would

7    have this Court reweigh the evidence, this is not the proper role of a reviewing

8    court.  *See Henry v. Dep't of Navy*, 902 F.2d 949, 951 (Fed. Cir. 1990) ("It is not

9    for this court to reweigh the evidence before the Board."); *see also Haebe v. Dep't

10   of Justice*, 288 F.3d 1288, 1298 (Fed. Cir. 2002) ("The question before [the court]

11   is not how the court would rule upon a *de novo* appraisal of the facts of the case,

12   but whether the administrative determination is supported by substantial evidence

13   in the record as a whole.").  Because Plaintiff has failed to meet her burden to

14   show reversible error, *see Buie*, 386 F.3d at 1129, Defendant is entitled to

15   summary judgment as to this issue.

16                    **b. Implementing Reassignment Procedures**

17                         **i. AJ's Findings**

18   Second, the AJ found that the Agency did not act arbitrarily in implementing

19   its directed reassignment procedures and identifying Plaintiff as an affected

20   employee.  AR 955-57.  Pursuant to the Agency's then-applicable Directed

1  Reassignment Directive, "for reassignments which require a household move,

2  managers may identify affected employees by using the most recent Service

3  Computation Date (SCD) for leave in the affected series and grade level at the duty

4  site where the position is located." AR 955 (quoting AR 347-49) (brackets

5  omitted).  Conversely, the Agency's Reduction in Force ("RIF") Directive utilized

6  a different standard—retention registry, which considers the employee's seniority,

7  veteran status, and performance, ECF No. 65-2 at 7—for determining the affected

8  employees.  AR 958 (citing AR 363-64).  The AJ ultimately determined that

9  nothing required the Agency to use the RIF policy instead of the directed

10 reassignment; rather, it was a matter of discretion in choosing between the two

11 procedures.  AR 958 (citing AR 363-64 (explaining that the RIF procedures "may"

12 be used for directed reassignments and that such a decision is within the Agency's

13 discretion)).  Thus, the AJ's focus was rightfully on the Directed Reassignment

14 Directive.

15       The central issue with the Directed Reassignment Directive surrounded use

16 of the term "duty site" as the geographical area from which affected employees

17 would be drawn.  Plaintiff argued below that if the Agency had instead used a

18 broader geographic scope, as it purportedly had with other directed reassignments,

19 Plaintiff would not have been selected for reassignment.  AR 928.

20

Focusing on testimony by the Agency's witnesses, the AJ found that the Agency had consistently interpreted the term "duty site," although not defined in the Directive, to mean "duty station."  AR 956 (citing Hearing CD1 1:37, 4:58-4:59).  For instance, Ms. McDonald of HR testified that in her thirteen years as a Staffing Specialist with the Agency, the Agency had always interpreted the term "duty site" to mean "duty station."  ECF No. 65-2 at 7 (Hearing CD1).  Similarly, Brett Mourer and Robert Keeney both testified that the term "duty site" was interpreted by the Agency to mean "duty station."  ECF No. 65-2 at 5, 20 (Hearing CD1).  The AJ also noted that the previous reassignment directive had used "local commuting area," as opposed to "duty site," but had "deliberately changed this to avoid disputes about the boundaries of local commuting areas." AR 955-56 (citing AR 374-76; Hearing CD1 4:56-4:58); *Beardmore v. Dep't of Agric.*, 761 F.2d 677, 679-80 (Fed. Cir. 1985)).  Brett Mourer testified to the same.  ECF No. 65-2 at 20 (Hearing CD1).

The AJ acknowledged evidence to the contrary, both in regard to the use of SCDs to select employees and the geographic range of employees considered.  In the proceedings below, Plaintiff highlighted two letters from directed reassignments in Florida that referred to the affected employee as having the lowest seniority in a particular "county," and another document regarding a reassignment in Idaho that referred to "local commuting area"rather than duty

station.  AR 956 (citing AR 493-523, 569-72, 699-706, 717-21).  Further the AJ acknowledged a "few occasions" when the Agency used something other than SCDs to select employees for reassignment.  AR 956 (citing Hearing CD2 2:31).

Nonetheless, the AJ did not find this evidence convincing.  Regarding the dispute over whether the employees would be selected from the applicable duty station, county,[7] or local commuting area, the AJ found the following: "[W]hile the agency may have used imprecise language in these documents, each grader in fact had the lowest seniority at his or her duty station, and there is no evidence the agency in fact considered employees at duty stations other than the one at issue."  AR 956-57 (citing Hearing CD1 5:03, 5:44; Hearing CD2 0:15-0:16).  Further, the AJ thought the focus on the duty station, rather than a larger geographical area,

---

[7] Plaintiff's argument that the pool of employees should have been drawn from the county is particularly unsuccessful as applied to the facts here: Plaintiff's duty station was in Yakima County, whereas the two graders with lower SCDs—Mr. Edwards and Mr. Leggett—had duty stations in Kittitas County and Umatilla County, respectively.  Hearing CD 1; *see* ECF No. 65-2 at 22.  Thus, expanding the geographic scope to a county-wide approach would have resulted in no difference here.

ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT ~ 21

was reasonable considering the overstaffing problem was concentrated at the

Yakima duty station:

> If the agency reassigned a grader at another duty station, that alone
> would not solve the problem of overstaffing at the first duty station.
> The agency would have to continue reassigning employees to the
> vacancies it created until it reached one of the employees at the
> affected duty station. Nothing requires an agency to go through this
> musical-chair arrangement rather than simply reassigning an
> employee from the affected duty station at the outset.

AR 957 (citing Hearing CD1 2:29-2:30).  This finding was supported by the

testimony of Brett Mourer, who testified that there was never discussion about

expanding the area of consideration to the entire Yakima area or all seven states

"[b]ecause [the agency] was overstaffed in one specific location"—the Yakima

duty station.  ECF No. 65-2 at 21 (Hearing CD1).

Finally regarding use of a selection standard other than SCDs, the AJ found

no evidence that it would have made a difference if the Agency had used a

different standard in Plaintiff's case.  AR 956.  Rather, the AJ heard uncontradicted

testimony that, even with use of a retention registry, Plaintiff had the lowest RIF

retention standing of the other GS-9 graders at the Yakima duty station and would

have been one of the employees selected for reassignment if this standard was

used.[8]  AR 956 (Hearing CD1 1:49-1:50).  Therefore, the AJ found that any

procedural error in using the SCD standard, rather than the retention registry, was

harmless as applied to Plaintiff's case.  *See Ward v. U.S. Postal Serv.*, 634 F.3d

1274, 1279 (Fed. Cir. 2011) (discussing harmful error standard, which requires

employee to show that an agency's application of its procedures likely caused the

agency to reach a conclusion different from the one it would have reached in the

absence or cure of the error).

Ultimately, the AJ found Plaintiff's reassignment was not arbitrary and was

in accordance with Agency policy and practice.  There was no dispute that Plaintiff

had the most recent SCD among the four GS-9 graders with official duty stations

of Yakima[9]—Plaintiff was identified as such by HR in accordance with the

Agency's Directed Reassignment Directive.  AR 957 (citing AR 527-30).  The

only way the outcome would have been different is if the Agency had considered

employees in a larger geographical area, which the AJ reasonably found, and as

---

[8] Moreover, Brett Mourer testified that the two employees who were reassigned in

Florida based on the retention registry also had the lowest SCDs at their official

duty station.  ECF No. 65-3 at 3 (Hearing CD2).

[9] Although Human Resources initially listed Mr. Edward as having the most recent

SCD, this identification was in error.  Mr. Edwards was assigned to a duty station

in Ellensburg, Washington, not Yakima.  *See* AR 527-29.

1    testified to by Agency personnel, would not have alleviated the overstaffing

2    problem at the Yakima duty station.

3                           **ii. This Court's Findings**

4          On appeal, Plaintiff faults the AJ for ignoring evidence and misapplying

5    applicable law and regulations when reviewing the Agency's reassignment

6    procedures.  In Plaintiff's First Amended Complaint, she asserts that the Agency

7    used improper procedures when it identified which employees would be issued

8    directed reassignments.  ECF No. 8 ¶¶ 34, 37.  In her response briefing, albeit in a

9    section attacking a subsequent part of the AJ's analysis, Plaintiff reasserts

10   argument presented below regarding the proper geographical scope of employees

11   to consider.  ECF No. 68 at 22-26.

12         This Court concludes that the AJ's findings have a rational basis supported

13   by substantial evidence and are in accordance with the applicable law.  *Hayes*, 727

14   F.2d at 1537.  The AJ adequately considered and weighed relevant evidence, drew

15   permissible inferences from the evidence presented, and made rational conclusions

16   in finding that Plaintiff was properly chosen—based on the most recent SCD at the

17   Yakima duty station—for reassignment.  Again, Plaintiff misunderstands this

18   Court's duty upon review: it is not to reweigh all the evidence, consistent with a *de*

19   *novo* standard of review, but rather to determine whether the AJ's opinion is

20   supported by substantial evidence in the record as a whole. *See Haebe*, 288 F.3d at

1298.  There is no dispute that Plaintiff had the most recent SCD at the Yakima

duty station. AR 527.  In turn, the evidence supports the finding that the use of

SCDs and the focus on the duty station is both rational and consistent with past

Agency practice.  As the AJ logically explained, because Yakima duty station had

the overstaffing problem, the most effective way to alleviate such a problem was to

reassign graders *at the Yakima duty station*.  AR 957.  Plaintiff's arguments to the

contrary are insufficient to demonstrate reversible error, s*ee Buie*, 386 F.3d at

1129; accordingly, Defendant is entitled to summary judgment as to this issue.

### 2.  Propriety of Removal

Third, the AJ found that "there is a clear nexus between failure to accept a

directed reassignment and the efficiency of the service, and removal is a reasonable

penalty for that conduct." AR 966.

"[D]iscipline is warranted for refusing to accept a legitimate directed

reassignment and  . . . removal is not an unreasonably harsh penalty for such a

refusal."  *Frey*, 359 F.3d at1357.  The court's "review of the penalty imposed by

the agency is 'highly deferential,' and [for which reversal] requires a showing that

the penalty is 'grossly disproportionate to the offense charged.'" *Bieber v. Dep't of

Army*, 287 F.3d 1358, 1365 (Fed. Cir. 2002) (internal citation omitted).

To the extent Plaintiff is also challenging the AJ's findings regarding the

propriety of removal, this argument is unavailing.  Plaintiff was issued a

reassignment from Yakima, Washington, to Kingsburg, California, which reassignment she was given adequate notice of and refused. AR 232, 242. As supported by testimony at the hearing, such disciplinary action is consistent with other agency employees who had refused a directed reassignment. ECF No. 65-2 at 11-12, 20 (Hearing CD1). Further, courts have repeatedly upheld removal as an appropriate disciplinary measure when an employee refuses a legitimate directed reassignment. *See, e.g.*, *Frey*, 359 F.3d at 1357. Considering the legitimacy of Plaintiff's reassignment here, Plaintiff has failed to demonstrate that the penalty of removal is "grossly disproportionate to the offense charged." *Bieber*, 287 F.3d at 1365. Accordingly, this argument, if even considered properly pled, too fails, and summary judgment is warranted.

### 3. Whistleblower Retaliation Defense

#### a. *Carr* factors

After finding that the Agency had proved its charge, the AJ proceeded to analyze Plaintiff's whistleblower retaliation defense. Because Plaintiff met her initial burden of proving her prima facie case for whistleblower retaliation,[10] the

---

[10] The parties agreed, for purposes of proceedings before the MSPB, that Plaintiff had made a protected disclosure and that the Agency was aware of this disclosure. AR 964. This Court subsequently found that Plaintiff's disclosure is protected under the WPA. ECF No. 54 at 11-13. The AJ also "assume[d] without deciding

burden then shifted to the Agency to show by "clear and convincing evidence" that it would have taken the same personnel action in the absence of Plaintiff's protected disclosures. *Whitmore*, 680 F.3d at 1367; *Fellhoelter*, 568 F.3d at 970-71. The "clear and convincing" standard is a high burden:

> Whether evidence is sufficiently clear and convincing to carry this burden of proof cannot be evaluated by looking only at the evidence that supports the conclusion reached. Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion.

*Whitmore*, 680 F.3d at 1368.

When determining whether the agency has met its burden, the AJ considers the following three factors: "[1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). When considering the *Carr* factors, the Board "does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but will weigh the factors that [Plaintiff had] met her initial burden of proving that this disclosure was a contributing factor in the agency's decision to reassign or remove her." AR 964.

together to determine whether the evidence is clear and convincing as a whole."

*Mithen v. Dep't of Veterans Affairs*, 2015 M.S.P.B. 38 (2015); *see also Whitmore*, 680 F.3d at 1374 ("To be clear, *Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor.").

### i. AJ's Findings

First, the AJ determined that the Agency had presented very strong evidence for justifying its directed reassignment and removal decisions. In his Initial Decision, the AJ found that the first *Carr* factor "weighs overwhelmingly in favor of the agency." AR 964. Pointing to the analysis regarding the propriety of reassignment, detailed above, the AJ found that the Agency had "presented very strong evidence that it had a legitimate reason for imposing the directed reassignment." AR 964. Further, citing this same evidence, the AJ found that the Agency had "shown that its decision to target the most junior employees at the Yakima duty station was consistent with its past practices, that the appellant was in fact the most junior employee stationed at Yakima, and that all employees who refused directed reassignments were removed." AR 964-65. Ultimately, the AJ found Plaintiff had "not shown that the reassignment or removal was handled irregularly or that there was anything suspicious about the manner in which it was carried out." AR 965.

On remand—although the Board effectively affirmed the AJ's initial ruling—the AJ again found the first factor weighed strongly in favor of the Agency. AR 1473-74. Specifically, the AJ found Plaintiff had not offered any evidence to rebut the clear and convincing evidence provided by the Agency supporting its employment decisions. AR 1473. For one, Plaintiff did not offer any evidence to rebut the showing that the Agency had not replaced Plaintiff's position or the two other grader positions that had been eliminated. AR 1473 (citing AR 953-54). Further, Plaintiff had failed to rebut the Agency's showing that, under its current policy, it had never selected an employee for a directed reassignment unless that employee was at a particular duty station that was overstaffed:

> At most she showed that the agency continued to use the phrase 'commuting area' in some of its documentation, but I already explained that this imprecise language does not cast doubt on the unequivocal testimony from the agency that every reassigned grader in fact had the lowest seniority at his or her duty station. The appellant offered no direct evidence to the contrary—no seniority rosters, for example, showing that the agency in fact sometimes passed over the least senior employee at the duty station in question in favor of someone with lower seniority at another duty station.

AR 1473 (citing AR 956-57, 1211).

Second, the AJ found that the Agency did not have a strong motivation to retaliate. In his Initial Decision, the AJ found the second *Carr* factor weighed "only mildly" in favor of Plaintiff." AR 965-66. In making this determination, the

AJ considered Plaintiff's argument that her direct supervisor, Doug Augspurg, had

a motive to retaliate against her:

> With respect to factor (2), the appellant appears to be arguing that her direct supervisor had a motive to retaliate against her because (according to her) he had told her to wait before revealing the moldy applesauce to the FDA, and she did not follow that instruction. She also testified that he slighted her in various ways after her disclosure. The supervisor's testimony was generally inconsistent with this account—he asserted that he directed the appellant to cooperate with the FDA and was pleased with what she did—but I will accept for argument's sake the appellant's version of events and assume without deciding that the supervisor may have had some motive to retaliate against her for her disclosure.

AR 965 (citing Hearing CD1 3:20-3:22; Hearing CD2 1:21-23, 1:36-1:38).

The AJ nonetheless found Mr. Augspurg's alleged motive "relatively weak."

AR 965.  For one, the AJ found that Mr. Augspurg had played only a "peripheral

role in the reassignment and removal process": "[Mr. Augspurg] testified without

contradiction that the agency's human-resources department, not he, decided which

employees would be reassigned and that he did not know in advance that the

appellant would be among them." AR 965 (citing Hearing CD1 3:03-3:04).  In

turn, "[t]he human-resources official who made the selection testified without

contradiction that nobody (including, presumably, the supervisor) made any

attempt to influence the process."  AR 965 (citing Hearing CD1 2:01).

Additionally, the AJ noted that Plaintiff's disclosure did not directly accuse her

1    supervisor or other agency official of misconduct, "so any motive to retaliate

2    would be relatively weak."  AR 965.

3        The AJ considered, and quickly dismissed, Plaintiff's allegation of

4    mistreatment by her supervisor.  For instance, Plaintiff alleged that Mr. Augspurg

5    moved her desk to a storage closet following cancellation of the Snokist contract.

6    AR 965-66 (citing Hearing CD2 0:26-0:27).  This closet, however, as

7    acknowledged by Plaintiff at the hearing below, "was roughly twenty-four feet by

8    eleven feet" and was assigned for purposes of accommodating Plaintiff's alleged

9    disability and protecting her from another employee whom Plaintiff had previously

10   complained was harassing her.  AR 966 (citing Hearing CD2 1:52-1:53).

11       On remand, the AJ considered additional evidence and argument submitted

12   by Plaintiff that the Agency would have been motivated to retaliate against her

13   because her whistleblowing led to cancellation of a large inspection contract and

14   unfavorable newspaper coverage.  AR 1474.  Although the AJ acknowledged that

15   the Agency had some motive to retaliate "to the extent that [Plaintiff's] disclosure

16   set in motion the cancelation of the Snokist contract," he continued to find this

17   motive "not particularly strong" because the disclosure involved conditions at a

18   private facility, did not directly accuse anyone at the Agency of misconduct, and

19   the official who was ultimately responsible for Plaintiff's removal testified that he

20   was not upset by the cancellation.   AR 1474.  Regarding the newspaper coverage,

the AJ noted all articles that focused on the Agency had been published after

Plaintiff had already been removed; thus, the coverage could not have affected the

Agency's decision.  AR 1474 (citing AR 1244-48, 1253-56); *see Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1372 (Fed. Cir. 2001) ("[T]he action taken by the

agency officials must be weighed in light of what they knew at the time they acted;

thus, later developments cannot be used either to support or undercut the validity

of the action taken.").  The AJ ultimately concluded that the second *Carr* favor

weighed in favor of Plaintiff and "more heavily" than previously found.  AR 1474.

Third, the AJ found that the Agency has taken similar actions against

similarly-situated, non-whistleblower employees.  In his Initial Decision, the AJ

initially found that the third *Carr* factor—evidence that the agency takes or has

taken similar actions against similarly situated employees who are not

whistleblowers—"weigh[ed] in favor of the agency, although also only mildly."

AR 966.  The AJ found the evidence showed at least one other employee, not

known to be a whistleblower, was removed after rejecting a directed reassignment.

AR 966 (citing Hearing CD1 0:24, 2:52).  Specifically, the AJ heard testimony in

the case of one employee in Burley, Idaho, who had been reassigned due to

overstaffing and subsequently removed after he refused reassignment.  ECF No.

65-2 at 20-21 (Hearing CD1).  Although this showed that the Agency had taken

1   similar action against non-whistleblowers, the sample size was too small to draw

2   any "strong conclusions about patterns of agency behavior." AR 966.

3       On remand, the AJ readdressed the third *Carr* factor and found that it

4   "weigh[ed] very strongly in the agency's favor." AR 1472. The AJ considered

5   additional evidence that since 2003, thirty employees including Plaintiff had been

6   removed for failing to accept a directed reassignment and none of these employees,

7   save for Plaintiff, was known to be a whistleblower. AR 1470 (citing 1114).

8   Plaintiff offered no evidence to the contrary. AR 1470. Although the AJ found

9   Plaintiff was assigned significantly less work than her co-workers during the

10  period between when she refused reassignment and was removed, AR 1471 (citing

11  1307-08), the AJ found credible Mr. Augspurg's affidavit, which stated Plaintiff

12  was on sick leave for part of the time and placed on paid administrative leave for

13  the remainder of the time when Plaintiff stated she would be unable to perform the

14  functions of her work.[11] AR 1471 (citing AR 1414-16). The AJ found Plaintiff did

15  not rebut Mr. Augspurg's affidavit with credible evidence. AR 1471.

16  ----

    [11] The AJ did note that Plaintiff was treated differently from non-whistleblowers in

17  that she was placed on *paid* administrative leave after she refused reassignment;

18  however, the AJ found this to be favorable treatment and questioned the relevance

19  as the proper inquiry was whether the Agency had removed non-whistleblowers for

20  refusing reassignments. AR 1471 (citing AR 960, 1218-20).

1    Ultimately, on remand, the AJ found the Agency had proved by clear and

2  convincing evidence that it would have reassigned and removed Plaintiff

3  regardless of her whistleblowing:

> Considering the factors as a whole, . . . I am still left with a firm belief
> that the agency would have reassigned and removed the appellant
> regardless of her whistleblowing.  For the reasons explained in my
> previous decision and in the Board's rulings in this appeal . . . , the
> agency had strong evidence supporting its decision to take these
> actions.  The agency also offered unrebutted evidence that it has
> removed more than two dozen non-whistleblowers in similar
> circumstances and that it has never taken any other action when an
> employee refused a directed reassignment and did not resign or retire
> voluntarily. Although the agency may have had some motive to
> retaliate against the appellant for her whistleblowing, I find that the
> evidence on the other factors greatly outweighs this motive. The
> agency selected the appellant for reassignment based on the same
> criteria it has used in all similar situations, and when she refused the
> reassignment it treated her exactly as it had treated all similarly
> situated employees.  Because there is no credible evidence that the
> agency has systematically tried to punish whistleblowers through
> directed reassignments, this equality of treatment is powerful support
> for the agency's position. I therefore find that the agency has proved
> by clear and convincing evidence that it would have reassigned and
> then removed the appellant regardless of her disclosure, and that the
> appellant has not established her defense of whistleblower retaliation.

16  AR 1474-75.

### ii.    This Court's Findings

18    On appeal, Plaintiff first asserts that the AJ did not apply the proper standard

19  of review when analyzing the strength of evidence supporting the Agency's

20  reassignment and removal decisions.  ECF No. 68 at 11-18.  Specifically, Plaintiff

ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT ~ 34

asserts that the AJ failed to apply the clear and convincing standard of proof when discussing the strength of the Agency's evidence in support of its actions.[12] Plaintiff also asserts that the AJ improperly shifted the burden to Plaintiff to rebut the Agency's evidence supporting the first *Carr* factor. *Id.* at 13-15.

This Court disagrees. The AJ, at the conclusion of his analysis, properly determined that the factors *as a whole* provided clear and convincing evidence for the Agency's decision. *See Whitmore*, 680 F.3d at 1374 ("To be clear, *Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor."). Thus, the AJ was not required to explicitly find that clear and convincing evidence supported the first factor alone. Nonetheless, the evidence presented to the AJ adequately supported his initial conclusion that the first factor weighed "overwhelmingly in favor" of the Agency and his ultimate conclusion that the evidence presented by the Agency—and not rebutted by

---

[12] In critiquing the AJ's application of the clear and convincing standard, Plaintiff faults the AJ for "[f]ailing to require USDA to disclose its files of out-of-Yakima-area service reductions and imposing on Alguard the obligation to quantify how or how much Yakima service reductions resulted." ECF No. 68 at 15. As stated previously, the AJ was not required—without a motion to compel or directive on remand—to order the Agency to disclose. *See Tiffany*, 795 F.2d at 69.

1   Plaintiff—"bolster[ed] the agency's argument on the clear and convincing

2   evidence supporting its position."  Plaintiff's contention that the AJ improperly

3   shifted the burden to Plaintiff to rebut the Agency's reassignment decision

4   similarly lacks merit.  The AJ did not shift the burden; he found that the Agency

5   had presented sufficient evidence to satisfy its burden, evidence of which Plaintiff

6   had not called into question.

7        Plaintiff also asserts that the AJ erred by not considering evidence of Mr.

8   Augspurg's alleged retaliatory motive.  ECF No. 68 at 6-11.  According to

9   Plaintiff, the evidence below, in the aggregate, demonstrated that Mr. Augspurg

10   discouraged Plaintiff from disclosing the moldy totes issue to the FDA.  *Id*. at 7-8.

11   Further, Plaintiff contends that the AJ did not appropriately examine Mr.

12   Augspurg's role in the reassignment and removal process—that is, which station

13   was overstaffed, how many positions to eliminate, and which grade of position to

14   eliminate.  *Id.* at 9-10.

15        Regarding the AJ's examination of Mr. Augpurg's alleged retaliatory

16   motive, this Court does not find error.  The AJ explicitly addressed both the

17   evidence supporting and negating the Agency's retaliatory motive and ultimately

18   determined that this factor weighed only "mildly" in favor of Plaintiff.

19   Specifically, the AJ addressed Plaintiff's testimony, which, in part, accused Mr.

20   Augspurg of discouraging her from cooperating with the FDA, and noted that Mr.

1  Augspurg's testimony was generally inconsistent.  AR 965.  Indeed, Mr. Augspurg

2  testified that he *encouraged* Plaintiff to disclose the moldy totes issue with the

3  FDA and approved of her cooperation, even recommending her for an award.

4  Hearing CD1 3:20-3:23.  Even accepting Plaintiff's allegations as true, the AJ

5  found the weight of the evidence showed that Mr. Augspurg played only a minor

6  role in the reassignment and removal process and although Plaintiff argues that her

7  disclosures "indirectly implicated" Mr. Augspurg, the AJ appropriately reasoned

8  that an indirect accusation did not carry as much weight.[13]  AR 965.

9      Regarding the AJ's examination of Mr. Augspurg's role in Plaintiff's

10  reassignment and removal, this Court does not find error.  "[W]hen applying the

11  second *Carr* factor, the Board will consider any motive to retaliate on the part of

12  the agency official who ordered the action, as well as any motive to retaliate on the

13  part of other agency officials who influenced the decision."  *Whitmore*, 680 F.3d at

14  1371.  Although Plaintiff would define Mr. Auspurg's role differently, the

15  uncontradicted evidence shows that it was, at most, peripheral.  True, Mr.

16  [13] Plaintiff highlights emails between Mr. Augspurg and other Agency personnel as

17  evidence of historical misconduct on the part of Mr. Augspurg in trying to conceal

18  the health issues at Snokist.  ECF No. 68 at 7-8 (citing AR 557-58).  However, if

19  anything, these emails show Mr. Augspurg's transparency, not concealment,

20  regarding past issues at Snokist. *See* AR 556-61.

1   Augspurg was involved in discussions of revenue loss and staffing needs; however,

2   the AJ correctly found that Mr. Augspurg had no *direct* involvement in the

3   Agency's decision to reassign and remove Plaintiff.  Indeed, despite Plaintiff's

4   attempts to solely attribute the reassignment decision to Mr. Augspurg, ECF No.

5   68 at 9-10, testimony shows that the initial determination that the Yakima duty

6   station was overstaffed was made by Mr. Augspurg in conjunction with Brett

7   Mourer (Assistant to the Branch Chief), Tony Gianneta (Western Regional

8   Director), and Randall Making (Acting Branch Chief).  ECF No. 65-2 at 12

9   (Hearing CD1).  Lynn McDonald, of HR, also testified that she had received an

10  email request from Brett Mourer to identify the SCD order of GS-9 Graders in

11  Yakima and that the request did not specify that any particular employees be

12  identified.  ECF No. 65-2 at 8 (Hearing CD1).  Robert Keeney testified that he was

13  the deciding official in Plaintiff's removal. ECF No. 65-2 at 4 (Hearing CD1).

14  Besides Plaintiff's baseless allegations, the evidence before the AJ would not

15  support a finding suggested by Plaintiff—that Mr. Augspurg was directly involved

16  in these decisions, let alone that he had "central decisional authority in impacting

17  [Plaintiff's] career."  *See* ECF No. 68 at 10.

18      Although Plaintiff would have this Court reweigh all of the evidence and

19  assign greater weight to the Agency's retaliatory motive, this is not the duty of the

20  Court.  *See Haebe*, 288 F.3d at 1298.  Rather, this Court's duty is to determine

1    whether the AJ's opinion is sufficiently supported by evidence in the record as a

2    whole, which this Court so finds here.   Despite Plaintiff's protestations, the AJ did

3    consider the negative effect Plaintiff's disclosures had on the Agency in general,

4    the evidence indicating Mr. Augspurg's alleged motive to retaliate against Plaintiff

5    in particular, and the evidence demonstrating which personnel were involved in

6    Plaintiff's directed reassignment and ultimate removal.  Accordingly, because the

7    AJ's analysis of factor two considered all the evidence in the aggregate in

8    concluding that the Agency's motive to retaliate was weak, Plaintiff has not shown

9    error.

10           Finally, on appeal, Plaintiff questions the AJ's determination that the

11   Agency proved that it treated similarly-situated non-whistleblower and

12   whistleblower employees alike.  ECF No. 68 at 20-26.  Specifically, Plaintiff

13   appears to fault the AJ for not scrutinizing how the Agency selected non-

14   whistleblower employees for reassignment.  *Id.* at 21.

15           This Court once again disagrees with Plaintiff's assertion.  In analyzing the

16   third *Carr* factor, the AJ was required to consider whether similarly-situated non-

17   whistleblower employees were treated differently.  "[F]or an employee to be

18   considered similarly situated to an individual who is disciplined, it must be shown

19   that the *conduct* and the *circumstances surrounding the conduct* of the comparison

20   employee are similar to those of the disciplined individual."  *Carr*, 185 F.3d at

1  1326 (emphasis added); *see also Whitmore v. Dep't of Labor*, 680 F.3d at 1373

2  (focusing on both characteristics and conduct when determining the pool of

3  similarly-situated employees).  Here, the AJ, focusing on relevant conduct,

4  properly determined that the class of similarly-situated employees was those who

5  had also refused a directed reassignment.  In so defining, the AJ considered

6  evidence regarding 29 non-whistleblower employees who had been similarly

7  removed for failing to accept a directed reassignment.

8        At any rate, the Agency was not required to produce evidence and

9  affirmatively prove each and every one of the three *Carr* factors.  *Whitmore*, 680

10  F.3d at 1374.  Even if there was evidence presented addressing whether the

11  Agency also *reassigned* similarly-situated non-whistleblower employees—

12  although it is unclear on what basis that similarly-situated class would be formed—

13  "[t]he agency is not required to present evidence concerning all three of [the *Carr*]

14  factors; rather, '[t]he factors are merely appropriate and pertinent considerations

15  for determining whether the agency carries its burden.'" *Cassidy v. Dep't of*

16  *Justice*, 581 Fed. App'x 846, 851 (Fed. Cir. 2014) (quoting *Whitmore*, 680 F.3d at

17  1374).  Accordingly, this Court does not find error.

18        Overall, this Court finds the AJ's conclusion that the Agency had shown by

19  clear and convincing evidence that it would have removed Plaintiff even in the

20  absence of any protected closures—specifically, that the strength of the Agency's

ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT ~ 40

evidence in support of its personnel decisions was very strong, that the Agency's

motivation to retaliate was relatively weak, and that the evidence showed the

Agency did not treat Plaintiff differently than other similarly-situated non-

whistleblower employees—is supported by substantial evidence.  *See Yunus*, 242

F.3d at 1372 (upholding as supported by substantial evidence the Board's finding

that the Agency had shown by clear and convincing evidence that it would have

removed the employee even in the absence of any protected disclosures).

Accordingly, Defendant is entitled to summary judgment on this issue.

### C. Confinement to Proceedings Before the MSPB

An employee who has been subjected to an action that is appealable to the

Board and alleges that she has been affected by a prohibited personnel practice

other than a claim for discrimination may elect to pursue a remedy through one,

and only one, of the following remedial processes: (1) an appeal to the MSPB

pursuant to 5 U.S.C. § 7701; (2) a grievance filed pursuant to the provisions of the

negotiated grievance procedure; or (3) a complaint following the procedures for

seeking corrective action from the OSC pursuant to 5 U.S.C. § 1211-1222.[14] 5

---

[14] An individual right of action, if not directly appealable to the MSPB, must first

be presented to the OSC.  5 U.S.C. §§ 1214(a)(3); *Briley v. Nat'l Archives &*

*Records Admin.*, 236 F.3d 1373 (Fed. Cir. 2001).  An employee may then appeal

her retaliation claim to the MSPB if one of two scenarios occurs: (1) either the

U.S.C. § 7121(g)(2); *Moran v. MSPB*, 152 F.3d 940 (Fed. Cir. 1998)

(unpublished). "[A]n employee's first timely-filed action determines the exclusive

election under section 7121." *King v. Dep't of the Air Force*, 2011 M.S.P.B. 56

(2011).

### 1.  AJ's Findings

The issue before the AJ on remand was whether Plaintiff made a binding

election to seek corrective action from the OSC under 5 U.S.C. § 7121(g) and was

therefore precluded from subsequently filing an appeal with the MSPB.  In his

Final Decision, the AJ concluded that Plaintiff did not make a binding election to

seek corrective action from the OSC with respect to her removal.  AR 1467-69.  As

found by the AJ, Plaintiff filed a complaint with the OSC on September 6, 2011,

challenging the agency's reassignment decision and alleging retaliation.  AR 1467

---

OSC has notified the employee her claim has been terminated and no more than 60

days have passed, or (2) 120 days have passed and the OSC has not notified the

employee that it will seek corrective action on her behalf.  5 U.S.C. § 1214(a)(3).

Although the MSPB, in its Order to Show Cause, initially construed Plaintiff's

claim as an individual right of action, ECF No. 28-2 at 2, her second appeal to the

MSPB was docketed as a chapter 75 appeal.  The MSPB noted that Plaintiff did

not challenge her appeal as incorrectly docketed below.  AR 1071 n.3.

(citing AR 1224, 1229-33).  In November 2011, Plaintiff raised the agency's proposed removal with the OSC.  AR 1467-68 (citing AR 1224, 1235, 1237, 1242).  However, it was not until December 2011 that the Agency effected its removal decision.  AR 1468 (AR 145-58).  The AJ found that Plaintiff could not have elected to seek corrective action from the OSC with respect to her removal before the agency actually *effected* the removal.  AR 1468.  As noted by the AJ, Plaintiff did not attempt to amend her OSC complaint to include the effected removal until after she filed her Board appeal.  AR 1468 (citing AR 1279).

Moreover, the AJ found that Plaintiff could not have made a knowing and informed election to proceed exclusively before the OSC.  AR 1468-69.  Because the Agency had failed to provide Plaintiff notice of her right to seek corrective action from the OSC in her notice of removal, "much less that doing so might preclude her from filing a Board appeal," the AJ found Plaintiff could not have made a binding election to proceed before the OSC, even if she had timely challenged her removal to that entity.  AR 1468-69 (citing *Agoranos v. Dep't of Justice*, 2013 M.S.P.B. 41 (2013)).

## 2.  This Court's Findings

In her First Amended Complaint, Plaintiff faults the AJ for confining her to proceedings before the MSPB and thus depriving her of seeking redress through

the OSC.  ECF No. 8 ¶ 35.  Plaintiff has failed to present argument regarding this claim in her response briefing.  *See* ECF No. 68.

This Court finds the AJ's findings are consistent with the applicable law, specifically the MSPB's binding election analysis in *Agoranos*.  As noted by the AJ, in order for an employee to make a binding election, his or her election must be "knowing and informed"—"if it is not, it will not be binding upon the employee."  2013 M.S.P.B. 41.  In *Agoranos*, the employee first filed a complaint with the OSC alleging retaliation for several disclosures, which complaint he then amended to include his removal.  *Id.*  Subsequently, the employee filed an appeal with the MSPB.  The MSPB found that the employee could not have made a binding election to proceed before the OSC, despite first initiating proceedings with that entity, because the employee was neither notified of his right to file a request for corrective action with the OSC nor of the effect that such a request would have on his appeal rights before the Board.  *Id.*; *see Agoranos v. Dep't of Justice*, 602 Fed. App'x 795, 799 (Fed. Cir. 2015) (mentioning without discussion the MSPB's determination that the employee's OSC complaint "did not constitute a valid, informed election").  As correctly noted by the AJ, Plaintiff could not have made a binding election to proceed with the OSC because such an election would not have been "knowing and informed" without proper notice of the right to file with the OSC and the effect of such filing.  *See* AR 494 (discussing Plaintiff's

1  appeal rights).  Plaintiff—who failed to address this issue in her response

2  briefing—has not met her burden to demonstrate reversible error.  *See Buie*, 386

3  F.3d at 1129.  Accordingly, Defendant is entitled to summary judgment on this

4  final issue.

5  **ACCORDINGLY, IT IS ORDERED:**

6      Defendant's Second Motion for Summary Judgment (ECF No. 64) is

7  **GRANTED**.

8      The District Court Executive is directed to enter this Order, provide copies

9  to counsel, enter **JUDGMENT** for Defendant, and **CLOSE** the file.

10     **DATED** August 20, 2015.

11

12                              THOMAS O. RICE
                            United States District Judge
13

14

15

16

17

18

19

20